

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SCOTT LOUIS PANETTI,<br>Petitioner, | §<br>§<br>§ | |
| V. | §<br>§ | CIVIL CASE<br>NO. A-04-CA-042-SS |
| DOUG DRETKE, Director,<br>Texas Department of Criminal<br>Justice, Institutional Division,<br>Respondent. | §<br>§<br>§<br>§ | |

## MOTION TO APPOINT EXPERT

The Petitioner, SCOTT LOUIS PANETTI, by his counsel, Michael Gross, respectfully moves this Honorable Court to appoint an expert psychiatrist for assistance reasonably necessary for the representation in this habeas corpus proceedings pursuant to 21 U.S.C. § 848(q)(9), McFarland v. Scott, 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 666(1994) and Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

### I. Request for Expert Assistance

Under 21 U.S.C. § 848(q)(9), indigent capital defendants are authorized to make applications for expert assistance *ex parte*:

> "Upon a finding in that investigative, expert or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or sentence, the court shall authorize the defendant's attorneys to obtain such services on behalf of the defendant and shall order the payment of fees and expenses therefore, under paragraph (10).[1]  No ex parte proceeding, communication, or request may be considered pursuant to this section

---

[1] 21 U.S.C. §848 (q)(10) authorizes the court to determine "the fees and expenses to be paid for investigative, expert, and other reasonably necessary services authorized under paragraph (9) . . .".

unless a proper showing is made concerning the need for confidentiality."

Counsel for Petitioner wishes to retain a forensic psychiatrist to evaluate Mr. Panetti, review medical documents and assist Counsel in the investigation, preparation and research of the claim of competency to be executed. This request for expert assistance is reasonably necessary because this Court has ruled in its Order dated January 28, 2004 (denying a stay of execution and the writ of habeas corpus) that "Panetti relies on the a psychiatric evaluation performed in 1997 and other factual allegations concerning his allegd incompetency prior to 1997 . . . [and] there is nothing in the petition that relates to his current mental state and Panetti has submitted no affidavit or other evidence regarding the same." See Order at 4. This request for expert assistance is reasonably necessary because the claim of competency to be executed has been presented and, given the above referenced Order of this Court, includes an issue upon which an expert will be essential to investigate, research and present evidence on the ground for relief. In order to prevail on his claim that he is not competent to be executed, Petitioner requires the assistance of a psychiatric expert.

The merits of this claim is supported by the following facts:

(1) Mr. Panetti has suffered from serious mental illness most of his life.

(2) Mr. Panetti has been hospitalized fourteen (14) times in six (6) hospitals for psychiatric observation due to depression, psychotic episodes, delusions and schizophrenia;

(3) Mr. Panetti has been under psychiatric medication since 1981;.

(4) Mr. Panetti had been involuntarily committed in 1990 due to homicidal ideation as a result of his persecutory delusions;

(5) Mr. Panetti's behavior at the time of the offense in 1992 was bizarre;

2

(6) During trial, Mr. Panetti showed flight of ideas and grandiosity which are symptoms of mania;

(7) During trial, Mr. Panetti showed looseness of associations, tangentiality in thought processes and idiosyncratic, bizarre thinking which are symptoms of schizophrenia;

(8) Mr. Panetti exhibited irrational and incompetent behavior, including referring to multiple personalities[2], throughout the pre-trial hearings, competency jury trials, waiver of counsel and trial on guilt-innocence;

(9) Mr. Panetti was evaluated in 1997 after trial at the penitentiary by Dr. Michael Arambula who confirmed that Mr. Panetti suffers from, among other mental illnesses, schizoaffective disorder which "is a chronic disease which almost always has some degree of activity throughout a person's life . . ." See Arambula evaluation at p. 63 of the clerk's record attached to the Motion to Reconsider filed along with this Motion;

(10) Mr. Panetti has corresponded with the undersigned counsel as recently as December 15, 2003 and his correspondence indicates that his mental status has not changed since counsel began representing Mr. Panetti in 1997.

Mr. Panetti is seriously mentally ill. Counsel needs the assistance of an expert in the field of forensic psychiatry to evaluate present competency to be executed.

## II. STATEMENT OF FACTS

Scott Louis Panetti has an extensive history of mental illness that extends from his first commitment in 1981 until his arrest in 1992. Petitioner had been hospitalized fourteen (14) times in six (6) different hospitals for mental illness before his arrest for capital murder. Mr. Panetti suffers from Schizoaffective Disorder, which is a combination of Schizophrenia and Manic Depression. During the acute or psychotic phase, a person with Schizophrenia cannot think logically and may lose

---

[2] Sargent Iron Horse; a Native American persona, Wounded Sun Bird, also known as He Who Does Not Cry; Will James I and Will James II; and, Ranahan, Top Hand.

all sense of who they are and others are; they may suffer from delusions[3], hallucinations[4] or disordered thinking and speech[5].

Mr. Panetti's psychiatric illness has reached psychotic proportions at times, when he suffered complete breakdowns from reality. The thought disorder, the Schizophrenic component, caused problems, both in perceptions (i.e., auditory hallucinations) and content (i.e., delusions that his home was possessed by demons, that the Feds followed him and that the people of Fredericksburg, Texas, were plotting against him). In 1990, suffering from these persecutory delusions, Mr. Panetti threatened homicidal action against those he believed were plotting against him, including his wife, daughter and father-in-law. That break down from reality lead to an involuntary commitment of Mr. Panetti by his wife.

In 1992, Mr. Panetti was under a Protective Order to stay away from his wife and her family because he had again threatened to kill them. On the morning of September 8, 1992, Mr. Panetti woke up at his bunkhouse and shaved his head before dressing into military fatigues and web gear. Mr. Panetti sawed off the barrel of his shot gun, filled his web gear with knives and took his 30.06 deer rifle to the residence of in-laws (Joe and Amanda Alvarado), where his wife (Sonya Alvarado

---

[3] Delusions are thoughts that are fragmented, bizarre and have no basis in reality. (i.e. someone is spying on or planning to harm them; or that someone can control their feelings, actions or impulses; or that they believe they are Jesus, or that they have unusual powers and abilities.).

[4] The most common hallucination is hearing voices that comment on the person's behavior, insult the person or give commands. Visual hallucinations, such as seeing nonexistent things, and tactile hallucinations such as a burning or itching sensation, also occur.

[5] Schizophrenics also suffer disordered thinking in which the associations among their thoughts are very loose. The associations may shift from one topic to another completely unrelated topic without realizing they are making no logical sense. The Schizophrenic may substitute sounds or rhymes for words or make up their won words, which have no meaning to others.

Panetti, now Sonya Alvarado) and daughter were staying. Mr. Panetti entered their home and shot both Joe Alvarado and Amanda Alvarado in the kitchen in the presence of his wife and daughter. Mr. Panetti then left the house taking his wife and daughter to his bunk house nearby Fredericksburg, Texas. Sonya Alvarado and her daughter, Amanda, were soon released. Mr. Panetti took his medication and lay down to sleep. Some twelve hours later, he awoke, changed into a suit and surrendered to the awaiting police.

### III. HISTORY OF PRIOR PROCEEDINGS

The Trial Court ordered a psychiatric exam of Mr. Panetti to determine if he was competent to stand trial on October 15, 1992. (T. Vol. 1, pgs. 30, 35-37).[6] A jury trial was held in Boerne, Kendall County, Texas, on July 24, 1994, to determine his competency. Although the Jury had indicated in notes that it was 9 to 3 for a verdict of incompetency and wanted more time to deliberate, the Trial Court sua sponte granted a mistrial. (T. Vol. 1, pg. 290). A second jury trial was held in Georgetown, Williamson County, Texas, on September 8, 1994. Evidence was heard on September 9, 1994. The Jury found Mr. Panetti competent to stand trial on September 9, 1994.

Mr. Panetti remained incarcerated in the Bell County Detention Center pending the capital murder trial. In April 1995, Mr. Panetti had a revelation he called an "April Fool's religious experience;" now, he believed that his attorneys were corrupt and that only an insane man could prove insanity. Mr. Panetti stopped taking his medication at that time. Mr. Panetti requested that

---

[6] The clerk's record from trial is contained in multiple volumes and will be referred to as "T and volume and page number." The court reporter's record from trial is contained in multiple volumes with roman numerals and will be referred to as "R and volume and page number." The state court hearing on the appointment of habeas counsel is in one volume and will be referred to as "Hearing and page number." The clerk's record from the state competency to be executed proceeding is attached to the Motion to Reconsider that was filed along with this Motion to Appoint Expert.

the Trial Court fire his counsel and let him represent himself. Mr. Panetti began writing irrational correspondence in May and June of 1995 to the Trial Court that he wanted to fire his lawyers and represent himself. (T. Vol. 1, pgs. 360-384).

On June 22, 1995, the Trial Court held a hearing on Mr. Panetti's request to represent himself. Counsel, Preston Douglas and Richard Mosty, advised the Trial Court that he was incompetent and that he was incapable of assisting counsel. At the hearing on self representation, Mr. Panetti made numerous irrational statements: including, that he was a "born again April fool"; that he was not alone since he had the "power of the holy spirit"; numerous references to multiple personalities; and, that he was not a "prisoner of war". Mr. Panetti's reason to represent himself was his persecutory delusion that this attorneys were in cahoots with those plotting against him. The Trial Court deemed Mr. Panetti competent to represent himself due to the prior jury verdict of September 1994. (R. Vol. 15, pg. 16). The Trial Court allowed attorneys Preston Douglas and Richard Mosty to withdraw. The Trial Court appointed Scott Monroe as standby by counsel on July 20, 1995. (R. Vol. 16, pgs. 5-8). Mr. Panetti then requested that stand by counsel be fired so that he could represent himself on August 8, 1995. The Trial Court ordered that standby counsel, Scott Monroe, provide no assistance unless Applicant specifically requested the assistance. (R. Vol. 17, pgs. 6-27).

On November 15, 1995, after the capital murder trial, Mr. Panetti was questioned by the Trial Court concerning the appointment of counsel for the state post-conviction habeas proceedings. This time, Mr. Panetti was **not** allowed to waive counsel and represent himself. The Trial Court found Petitioner incompetent to waive counsel for the habeas proceedings:

> THE COURT: Alright, so your request is that I not appoint you an attorney for writ of habeas corpus purposes?

6

MR. PANETTI: At this time, in the untreated state that I'm in, I don't feel competent to make that choice." (Hearing , pgs. 7-8).

"THE COURT: And in regard to Mr. Panetti, I'm going to recommend to the Court of Criminal Appeals that they appoint a writ attorney for you in light of some of your feelings about your need for medication, that a waiver would not be voluntary and intelligently made at this time;" (R. Hearing, pg. 9).

The Texas Court of Criminal Appeals on direct appeal affirmed the conviction on December 3, 1997. Panetti v. State, No. 72230 (Tex. Crim. App., December 3, 1997). The Supreme Court of the United States denied the petition for a writ of certiorari on October 5, 1998. Panetti v. Texas, No. 97-9393 (1998). A state application for writ of habeas corpus was filed on June 19, 1997 and was denied by the Texas Court of Criminal Appeals on May 20, 1998 without a hearing having been held in the state court. Ex parte Panetti, No. 37145-01 (Tex. Crim. App., May 20, 1998).

A petition for writ of habeas corpus was filed on September 7, 1999 in the United States District Court for the Western District of Texas and was denied without a hearing on March 8, 2001. Panetti v. Johnson, Cause No. A-99-CA-260 (W.D. Tex. 2001). The Fifth Circuit Court of Appeals affirmed the denial of the habeas petition on June 19, 2003. Panetti v. Cockrell, No. 01-50347 (5th Cir. 2003). The Supreme Court of the United States denied the petition for a writ of certiorari on December 1, 2003. Panetti v. Dretke, No. 03-6475 (2003).

On October 31, 2003, an Order Setting Execution was signed by the trial judge setting the execution for February 5, 2004 after 6:00 p.m. On December 9, 2003, a Motion to Determine Competency to be Executed was mailed for filing on behalf of Mr. Panetti with the trial court. See pp. 25-65 of clerk's record attached to Motion to Reconsider filed along with this Motion. This motion requested the trial judge conduct a hearing to determine the competency of Scott to be executed, to appoint counsel to prepare for and represent Scott at the competency hearing, and to

grant funds to enable Scott to hire a mental health expert to prepare for the competency hearing. Id. at 25. The trial court denied this motion without a hearing on December 23, 2003. Id. at 66. Counsel has been unable to obtain the assistance of an expert to provide a court with a current evaluation of Mr. Panetti.

## IV. RIGHT TO EXPERT ASSISTANCE IN CAPITAL CASES

In McFarland, the Supreme Court held that the right to counsel of condemned state prisoners in federal *habeas corpus* proceedings "necessarily includes a right for that counsel meaningfully to research and present a defendant's claims." McFarland, 114 S.Ct. at 2573. Specifically, the Court noted that 21 U.S.C. §848(q)(4)(B), authorizing the appointment of counsel in federal *habeas corpus* proceedings, "expressly incorporates 21 U.S.C. §848(q)(9), which entitles capital defendants to a variety of expert and investigative services upon a showing of necessity..." McFarland, 114 S.Ct. at 2572; *see also* Lawson v. Dixon, 3 F.3d 743, 751 (4th Cir. 1993), *cert. denied*, 114 S.Ct. 1391 (1994). The Court further stated that "[t]he services of investigators *and other experts* may be critical in the preapplication phase of a *habeas corpus* proceeding, when possible claims and their factual bases are researched and identified." McFarland, 114 S.Ct. at 2572 (emphasis added.)

The financial condition of the defendant is not to be a determining factor in his relationship to the criminal process. Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971); Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). When a question is likely to be a significant factor in his defense, the Petitioner is entitled to the assistance of an expert on this issue and the denial of that assistance would deprive him of due process. The United States Supreme Court set the due process low water mark for defense expert witnesses Ake as follows:

8

> "Meaningful access to justice has been the consistent theme of these cases. We recognized long ago that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense. Thus, while the Court has not held that a State must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy, it has often reaffirmed that fundamental fairness entitles indigent defendants to an adequate opportunity to represent their claims fairly within the adversary system. To implement this principle, we have focused on identifying the basic tools of an adequate defense or appeal, and we have required that such tools be provided to those defendants who cannot afford to pay for them." 470 U.S. at 77.

The Court's decision in Ake applies to a forensic psychiatrist reasonably necessary for an effective presentation of the Petitioner's claim of competency to be executed.

Appointment of an expert witness is necessary to insure that the Petitioner receive his rights to effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution; due process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution; and equal protection of the law guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

## V. CONCLUSION

This case involves a serious constitutional issue. The expert assistance requested is not only reasonably necessary for, but essential to, counsel's ability to represent Mr. Panetti according to the mandates of 21 U.S.C. § 848, McFarland and Ake. The expert assistance would provide counsel with the means necessary to provide the Petitioner with a full and fair investigation of his ground for relief in his federal habeas corpus action before this Court.

Wherefore, the Petitioner prays this Court grant him the authority to obtain the expert assistance described above.

Respectfully submitted,

*[signature]*

Michael C. Gross
State Bar No. 08534480
106 South St. Mary's Street, Suite 260
San Antonio, Texas 78205
(210) 354-1919
(210) 354-1920 (Fax)

COUNSEL FOR THE PETITIONER,
SCOTT LOUIS PANETTI

**CERTIFICATE OF SERVICE**

Because of the *ex parte* request at the commencement of this motion, opposing counsel has not been mailed a copy of the Motion.

*[signature]*

10