IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

SCOTT LOUIS PANETTI, §
    Petitioner, §
 §
V. § CIVIL CASE
 § NO. A-04-CA-042-SS
DOUG DRETKE, Director, §
Texas Department of Criminal §
Justice, Institutional Division, §
    Respondent. §

## MOTION TO RECONSIDER

COMES NOW SCOTT LOUIS PANETTI, the Petitioner in the above styled and numbered cause, and pursuant to Rule 59 of the Federal Rules of Civil Procedure files this Motion to Reconsider this Court's Order regarding the federal habeas corpus petition filed in this cause, and incorporated by reference in its entirety herewith, claiming Mr. Panetti is not competent to be executed and in support shows as follows:

### I.
### The clerk's record below.

In this Court's Order dated January 28, 2004, this Court stated that counsel failed to include with the motion to stay or federal habeas application the Article 46.04 motion filed in state court and without this application and the record from the state trial court, this Court cannot evaluate the reasonableness of the state court's conclusion regarding Mr. Panetti's competency to be executed. Counsel believed that the clerk's record from the state competency to be executed proceeding would have been submitted by the clerk's office when the federal habeas was filed. The clerk's record from this competency to be executed proceeding included all the information referred to above in this

1

7

Court's Order of January 28, 2004. Since the clerk's record has apparently not been forwarded to this Court, undersigned counsel has attached the clerk's record as Appendix One to this Motion to Reconsider for this Court's review on this matter.

## II.
### Expert assistance needed to develop the record.

This Court stated in its Order dated January 28, 2004, that "Panetti relies on the a psychiatric evaluation performed in 1997 and other factual allegations concerning his alleged incompetency prior to 1997 . . . There is nothing in the petition that relates to his current mental state and Panetti has submitted no affidavit or other evidence regarding the same." See Order at p. 4. Counsel requested the appointment of an expert during the state court proceedings regarding incompetency to be executed. See clerk's record at p. 25, 35-36. This request was denied. Id. at 66. Counsel has been unable to obtain the appointment of an expert to assist counsel in establishing Mr. Panetti's current mental state. This has not been the fault, however, of Mr. Panetti or his counsel. Mr. Panetti is indigent and cannot afford to hire such an expert and no court has appointed any expert to assist in this matter.

The Anti-terrorism and Effective Death Penalty Act (AEDPA) affects the grant of evidentiary hearings in federal court only if a habeas petitioner "failed to develop" the factual basis of a claim in state court. See 28 U.S.C. § 2254(e)(2). The Supreme Court held that Section 2254(e)(2) prohibits a federal evidentiary hearing only where there has been "[a] lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel" in failing to present the factual basis for the claim. (Michael) Williams v. Taylor, 120 S.Ct. 1479, 1488 (2000). "Diligence . . . depends upon whether the prisoner has made a reasonable attempt, in light of the information available at the time,

2

to investigate and pursue claims in state court; it does not depend . . . upon whether those efforts could have been successful." Id. at 1490. The state court in Mr. Panetti's denied the request for the appointment of an expert in psychiatry. Accordingly, counsel for Mr. Panetti cannot be faulted for failing to fully develop the factual basis of his incompetency claim in light of the state court's denial of the appointment of mental health experts and a competency hearing. Moreover, counsel's allegations of Mr. Panetti's incompetency, if true, would entitle Mr. Panetti to relief. Mr. Panetti is entitled to the appointment of counsel, to the appointment of an expert, and to an evidentiary hearing in this Court on his Ford claim.

In Mata v. Johnson, 210 F.3d 324 (5th Cir. 2000), the Fifth Circuit announced the boundaries of a district court's discretion in fashioning procedures constitutionally adequate to determine a petitioner's competency to abandon collateral review. The Fifth Circuit held that a district court must question the petitioner, on the record and in open court, concerning the knowing and voluntary nature of his decision to waive further proceedings. Id. at 331. The court explained:

> The opportunity for face-to-face dialogue between the court and the petitioner and the ability of the court to personally observe the petitioner is likewise important to the [competency] equation. The Supreme Court held that Drope's absence from trial after the suicide attempt bore on its analysis, in that "the trial judge and defense counsel were no longer able to observe him in the context of the trial and to gauge from his demeanor whether he was able to cooperate with his attorney and to understand the nature and object of the proceedings against him."

Id. at 330 (quoting Drope v. Missouri, 420 U.S. 162, 181 (1975)). By refusing to allow Mr. Panetti a hearing to testify and refusing to engage in any attempt to directly interview him, the state court violated the fundamentals of due process. The state court compounded the violation by refusing to appoint counsel or mental health experts for Mr. Panetti. Counsel filed today with this Court a Motion to Appoint Expert to remedy this situation.

# III.
## Unreasonable determination of the facts in light of the evidence.

The state court made an unreasonable determination that Mr. Panetti failed to make a substantial showing that he is incompetent to be executed. The merits of the habeas claim of incompetency to be executed is supported by the following facts, which were presented to the state court and of which the state court was aware:

(1) Mr. Panetti has suffered from serious mental illness most of his life;

(2) Mr. Panetti has been hospitalized fourteen (14) times in six (6) hospitals for psychiatric observation due to depression, psychotic episodes, delusions and schizophrenia;

(3) Mr. Panetti has been under psychiatric medication since 1981;.

(4) Mr. Panetti had been involuntarily committed in 1990 due to homicidal ideation as a result of his persecutory delusions;

(5) Mr. Panetti's behavior at the time of the offense in 1992 was bizarre;

(6) During trial, Mr. Panetti showed flight of ideas and grandiosity which are symptoms of mania;

(7) During trial, Mr. Panetti showed looseness of associations, tangentiality in thought processes and idiosyncratic, bizarre thinking which are symptoms of schizophrenia;

(8) Mr. Panetti exhibited irrational and incompetent behavior, including referring to multiple personalities[1], throughout the pre-trial hearings, competency jury trials, waiver of counsel and trial on guilt-innocence;

(9) Mr. Panetti was evaluated in 1997 after trial at the penitentiary by Dr. Michael Arambula who confirmed that Mr. Panetti suffers from, among other mental illnesses, schizoaffective disorder which "is a chronic disease **which almost always has some degree of activity throughout a person's life . . .**" See clerk's record at p. 63;

---

[1] Sargent Iron Horse; a Native American persona, Wounded Sun Bird, also known as He Who Does Not Cry; Will James I and Will James II; and, Ranahan, Top Hand.

(10) Mr. Panetti has corresponded with the undersigned counsel as recently as December 15, 2003 and his correspondence indicates that his mental status has not changed since counsel began representing Mr. Panetti in 1997.

Scott Louis Panetti has an extensive history of mental illness that extends from his first commitment in 1981. Mr. Panetti had been hospitalized fourteen (14) times in six (6) different hospitals for mental illness before his arrest in this case. Mr. Panetti suffers from Schizoaffective Disorder, which is a combination of Schizophrenia and Manic Depression. During the acute or psychotic phase, a person with Schizophrenia cannot think logically and may lose all sense of who they are and others are; they may suffer from delusions[2], hallucinations[3] or disordered thinking and speech[4].

Mr. Panetti's psychiatric illness has reached psychotic proportions at times, when he suffered complete breakdowns from reality. The thought disorder, the Schizophrenic component, caused problems, both in perceptions (i.e., auditory hallucinations) and content (i.e., delusions that his home was possessed by demons, that the Feds followed him and that the people of Fredericksburg, Texas, were plotting against him). In suffering from these persecutory delusions, Mr. Panetti threatened homicidal action against those he believed were plotting against him, including his wife, daughter and

---

[2] Delusions are thoughts that are fragmented, bizarre and have no basis in reality. (i.e. someone is spying on or planning to harm them; or that someone can control their feelings, actions or impulses; or that they believe they are Jesus, or that they have unusual powers and abilities.).

[3] The most common hallucination is hearing voices that comment on the person's behavior, insult the person or give commands. Visual hallucinations, such as seeing nonexistent things, and tactile hallucinations such as a burning or itching sensation, also occur.

[4] Schizophrenics also suffer disordered thinking in which the associations among their thoughts are very loose. The associations may shift from one topic to another completely unrelated topic without realizing they are making no logical sense. The Schizophrenic may substitute sounds or rhymes for words or make up their won words, which have no meaning to others.

father-in-law. That break down from reality lead to an involuntary commitment of Mr. Panetti by his wife.

On November 15, 1995, after the capital murder trial, Mr. Panetti was questioned by the Trial Court concerning the appointment of counsel for the state post-conviction habeas proceedings. This time, Mr. Panetti was **not** allowed to waive counsel and represent himself. The Trial Court found Petitioner incompetent to waive counsel for the habeas proceedings:

> THE COURT: Alright, so your request is that I not appoint you an attorney for writ of habeas corpus purposes?
>
> MR. PANETTI: At this time, in the untreated state that I'm in, I don't feel competent to make that choice." (11.071 Hearing , pgs. 7-8).
>
> "THE COURT: And in regard to Mr. Panetti, I'm going to recommend to the Court of Criminal Appeals that they appoint a writ attorney for you in light of some of your feelings about your need for medication, that a waiver would not be voluntary and intelligently made at this time." Id. at 9.

Mr. Panetti is seriously mentally ill and is not competent to be executed. Given the above facts, the state court's decision denying the Motion to Determine Competency to be Executed and holding Mr. Panetti failed to set forth alleged facts in support of the assertion that he is incompetent to be executed was based on an unreasonable determination of the above facts in light of the evidence presented in the state court proceeding. Given the above facts, reasonable jurists could disagree regarding whether the state court's decision was an unreasonable application of Ford. This Court should grant Mr. Panetti's federal habeas petition and should appoint counsel and an expert to assist Mr. Panetti in this matter.

## PRAYER FOR RELIEF

An erroneous determination of competence to be executed will impose grievous harm on Mr. Panetti, because execution is "the most irremediable and unfathomable of penalties." The State has

a substantial and legitimate interest in carrying out a valid death sentence. However, "[b]y comparison to the defendant's interest, the injury to the State of the opposite error – a conclusion that the defendant is incompetent . . . – is modest." Cooper v. Oklahoma, 517 U.S. 358, 365 (1996). While a person who has previously been convicted and sentenced to death enjoys fewer legal protections than one who has not been convicted, under Ford, a death-sentenced inmate who is incompetent is still entitled to his Eighth Amendment and Fourteenth Amendment rights not to be executed.

      ACCORDINGLY, counsel for Mr. Panetti asks this Court to:

1. Stay Mr. Panetti's execution scheduled for February 5, 2003, until he becomes competent to be executed; or, in the alternative,

2. Stay Mr. Panetti's execution to allow the parties a full and fair opportunity to develop and present reliable evidence about Mr. Panetti's current competency;

3. Appoint and compensate undersigned counsel to represent Mr. Panetti in these competency proceedings;

4. Authorize payment of funds for Mr. Panetti to retain mental health experts to evaluate him to determine whether he is malingering and whether he is competent to be executed;

5. Grant undersigned counsel leave to conduct discovery, including the right to take depositions and to subpoena witnesses and documents necessary to the reliable resolution of his Ford claim;

6. Hold an evidentiary hearing to resolve any disputed issues of fact about Mr. Panneti's present competency to be executed; and

7. Grant such other relief as law and justice require.

Respectfully submitted,

*[signature]*

Michael C. Gross
State Bar No. 08534480
106 South St. Mary's Street, Suite 260
San Antonio, Texas 78205
(210) 354-1919
(210) 354-1920 (Fax)

Counsel for the Petitioner,
SCOTT LOUIS PANETTI

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was mailed to Tina J. Dettmer, Assistant Attorney General, P.O. Box 12548, Capitol Station, Austin, Texas 78711-2548, on this 29th day of January 2004.

*[signature]*

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

## Notice of Document/Attachment(s) Not Imaged but Stored with Document in Case File

See Original File to View/Copy Document/Attachment(s)

Civil Case No.     A-04-CA-042 SS

SCOTT LOUIS PANETTI

VS.

DOUG DRETKE, Director

Attachments to
Document #:     7

Description:    Motion to Reconsider

File Date:      1/30/04

Prepared by:    MLC

**This sheet to be imaged as the last page.**