IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SCOTT LOUIS PANETTI, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. A-04-CA-042-SS |
| | § | |
| DOUG DRETKE, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

**RESPONDENT DRETKE'S OPPOSITION TO PANETTI'S
MOTION FOR AUTHORIZATION OF FUNDS FOR
EXPERT AND INVESTIGATIVE ASSISTANCE
AND OPPOSITION TO PANETTI'S MOTION FOR DISCOVERY**

The instant proceeding is a successive federal habeas corpus action in which Petitioner Scott Louis Panetti ("Panetti") seeks relief from his presumptively valid state conviction and death sentence pursuant to 28 U.S.C. §§ 2241, 2254. This Court previously ordered that Panetti's execution, scheduled for February 5, 2004, be stayed "to allow the state court to reconsider his motion under Article 46.05 of the Texas Code of Criminal Procedure challenging his competency-to-be-executed in light of the evidence of Panetti's current incompetency to be submitted to this and state court." DE 11.[1] On May 26, 2004, the state trial court entered an order finding that Panetti had failed to show, by a preponderance of the evidence, that he is incompetent to be executed. Panetti now returns to this Court seeking (1) authorization of funds for expert and investigative assistance, DE 17; and (2) discovery, DE 18, to further support his claim under *Ford v. Wainwright*, 477 U.S. 399 (1986), that he

---

[1] "DE" refers to the docket entry number assigned by this Court to the pleadings filed in this cause.

is incompetent to be executed. This Court should deny both requests.

Further development of Panetti's *Ford* claim is entirely unwarranted because the issue of his competency has been fully litigated in both this Court and in the state court. Panetti's competence to stand trial and waive counsel has was fully adjudicated on federal habeas review. *See Panetti v. Johnson*, Cause No. A:99-CA-290-SS (W.D. Tex. Mar. 9, 2001); *Panetti v. Cockrell*, No. 01-50347, slip op. at 6-8 (5th Cir. June 19, 2003). Furthermore, Panetti's competency to be executed was considered and rejected by the state court after the two mental health experts appointed to examine Panetti determined that understands (1) he is to be executed; (2) his execution is imminent; and (3) the reasons for his execution. *See* Exhibit A.

## CONCLUSION

The Director respectfully requests that this Court deny Panetti's motion for authorization of fund for expert and investigative assistance, as well as his motion for discovery.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

BARRY R. McBEE
First Assistant Attorney General

DON CLEMMER
Deputy Attorney General for Criminal Justice

GENA BUNN
Assistant Attorney General
Chief, Postconviction Litigation Division

_____
TINA J. DETTMER
Assistant Attorney General
Postconviction Litigation
Texas Bar No. 24026139

P. O. Box 12548, Capitol Station
Austin, Texas 78711
Tel: (512) 936-1600
Fax: (512) 320-8132

ATTORNEYS FOR RESPONDENT

# CERTIFICATE OF SERVICE

I, TINA J. DETTMER, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing pleading has been served by placing same in the United States Mail, postage prepaid, on this 1st day of July, 2004, addressed to:

Michael C. Gross
106 South St. Mary's Street
Suite 260
San Antonio, Texas 78205
Tel. (210) 354-1919
Fax. (210) 354-1920

　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　TINA J. DETTMER
　　　　　　　　　　　　　　　Assistant Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SCOTT LOUIS PANETTI, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. A-02-CA-042-SS |
| | § | |
| DOUG DRETKE, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## ORDER

It is hereby ordered that Petitioner's Motion for Authorization of Funds for Expert and Investigative Assistance and Petitioner's Motion for Discovery is DENIED.

Entered this _____ day of _____, 2004.

_____
SAM SPARKS
UNITED STATES JUDGE PRESIDING

# EXHIBIT A

CAUSE NO. 3310

| | | |
|---|---|---|
| THE STATE OF TEXAS | X | IN THE DISTRICT COURT |
| VS. | X | GILLESPIE COUNTY, TEXAS |
| SCOTT LOUIS PANETTI | X | 216TH JUDICIAL DISTRICT |

## ORDER REGARDING

## COMPETENCY TO BE EXECUTED

Pursuant to Article 46.05 of the Texas Code of Criminal Procedure, this Court appointed Mary Anderson, M.D. and George Parker, Ph.D., to conduct a competency examination.

The two aforesaid experts were appointed by the Court to determine whether or not the Defendant, Scott Louis Panetti, is competent to be executed based on standards set out in Subsection H, Article 46.05 of the Code of Criminal Procedure. Attached to this Order are the findings of Dr. Anderson and Dr. Parker.

It appears from the doctors' reports that the Defendant, Scott Louis Panetti, understands that he is to be executed; that the execution is imminent, and that the Defendant understands the reasons he is being executed.

Based on the aforesaid doctors' reports, the Court finds that the Defendant has failed to show, by a preponderance of the evidence, that he is incompetent to be executed.

ORDERED this 26th day of May, 2004.

STEPHEN B. ABLES
Judge Presiding

# GEORGE V. C. PARKER, PH. D.

CLINICAL AND FORENSIC PSYCHOLOGY

CONFIDENTIAL INFORMATION

April 28, 2004

Honorable Stephen Ables
216th Judicial District Court
Kerr County Courthouse
700 Main Street
Kerrville, Texas 78028

Re: Cause No 3310; State of Texas vs. Scott Louis Panetti
216th Judicial District Court, Gillespie County, Texas

Dear Judge Ables

Mary Anderson, M D and George Parker, Ph.D. are writing this to you as a report of our evaluation of Scott Panetti, whom we saw on March 24, 2004 at the TDCJ Polunsky Unit located in Livingston, Texas

Pursuant to your court order, our plan was to perform a psychiatric/psychological interview of Mr Panetti, and to administer at least one personality assessment psychometric study (Personality Assessment Inventory) to him Our intent was to gather data that would permit us to provide our professional opinions regarding the issues specified in Article 46 05 of the Texas Code of Criminal Procedure

## OVERVIEW OF OUR INTERVIEW

Throughout our interview, Mr Panetti was uncooperative He ignored our repeated questions about matters such as why he is in prison and whether he had been convicted of capital murder He even avoided answering our question about where he had grown up He responded to our questions by filibustering about the Bible and the Lord Our attempts to redirect him were met with irritable scorn, accusations that we lied to him, and/or excursions into prayer and hymn singing.

## DETAILS OF OUR INTERVIEW

We found Mr Panetti seated and waiting for us as we entered the interview room It became clear from the very beginning that Mr. Panetti intended to control the interview His controlling behavior began even as we were seating ourselves He did not respond to our greetings With glowering countenance, he immediately asked, first of Dr Parker, then of Dr Anderson, "Are you a Christian?"

Initially, neither of us responded to his question As Mr Panetti glowered at us, we identified ourselves by name and profession, and explained to him the nature of our visit

3307 NORTHLAND DRIVE, SUITE 225
AUSTIN, TEXAS 78731-4943    (512) 458-8020    FAX (512) 458-1456

Confidential Information<br>
To: Judge Stephen Ables<br>
Re: Scott Panetti<br>
April 28, 2004 / Page 2

We told him that we were court appointed by Judge Ables for the purpose of evaluating him regarding the issue of his competence to be executed. We told him that what transpired during our interview with him was not confidential, and that it could be used against him in a court of law. Mr Panetti continued to glower, and when we asked him whether he understood the purpose and nature of our visit, his response was to reiterate: "Are you a Christian?" We explained to him that we needed to talk to him about himself, not about our religious beliefs, and that there were some specific questions that we needed to ask him. He stubbornly persisted with his question, and began preaching to us about the Bible and the Lord. After several minutes, it became clear that we were at loggerheads, and that Mr Panetti was not going to respond to our questions unless we answered his question. Therefore, in an effort to encourage Mr. Panetti's cooperation and get the interview moving, we disclosed to him that we are Christians.

Unfortunately, that seemed to make the situation worse. Because now, continuing to glower at us, he told us that we were liars. Since it is important that there be at least a reasonable degree of trust in the evaluation relationship, we attempted to resolve the liar/trust issue. But that was largely to no avail. He refused to tell us why he labeled us liars.

### Examples of Mr Panetti's Interview Responses

Q. Why are you here in prison?
A. In order to preach the gospel of the Living King.

Q. Is there another reason why you're here in prison?
A. That's all been documented. You can look at the documents.

Q. Sir, did you kill somebody?
A. That's what they put in newspapers that publish lies. I'm only a messenger pray for peace in Jerusalem. (He then launched into prayer, referred to Article 33 of the UCMJ, loudly sang Onward Christian Soldiers, and talked about how AA wants to keep you coming back)

Q. You are on death row right now. Why?
A. They don't want me to preach the Word of God

Q Who are "They"?
A You can't understand unless you accept the Lord Is your name on the Book of Life?

Q Are you saying that you didn't kill some people? I'm asking you a direct question and you're not giving me a direct answer Were you convicted of capital murder?
A You tell me lies and I'm telling you the truth. You want to hear it from the horse's mouth, and the horse isn't saying what you want.

Q Were you convicted of capital murder?
A I have lost the ability to choose. I do not know right from wrong But the Lord does And so I follow the Lord.

Q Were you convicted of capital murder? Just yes or no?
A All answers are in the Bible

Q I'm asking you a direct question. How come you won't give me a direct answer?
A Do unto others as you would have them do unto you
Do you remember the first question I asked you?

And so it went for an hour

## DOCUMENTS AND COLLATERAL DATA RELIED UPON:

In view of Mr. Panetti's refusal to talk with us about the issues at hand, it was especially important for us to rely upon collateral data to help establish a basis for our professional opinions. These data included

1  Current TDCJ Medical Chart

2  Current Administrative Chart including visitor's log

3  Discussions with prison staff
    - The medical records administrator told us that the day previous to our visit she went to Mr Pannetti asking him to sign a release of records for Drs. Parker and

Confidential Information
To: Judge Stephen Ables
Re: Scott Panetti
April 28, 2004 / Page 4

Anderson Mr. Pannetti, however, refused to sign it, saying that his lawyer had not told him to do so

- From our discussion with the Polunski Unit senior Death Row officer (Major Steve Miller), we learned that Major Miller's opinion is that Mr Panetti clearly understands that he is to be executed, and that he knows why he is to be executed.

- Major Miller also informed us about the existence of Mr Panetti's Execution Packet, which contains information showing that Mr Panetti understood that his execution was imminent, and that he would die from his execution. Mr Panetti's Execution Packet is dated January 22, 2004

4 Review of several letters (personal correspondence) which Mr. Panetti has recently written to friends and family. Consistent with his preoccupation with religion, these letters contain numerous Biblical references. However, these letters also contain text which reveals that Mr. Panetti is able to form and verbalize normal, socially-appropriate thoughts when he chooses to do so

5. Competency Trial Transcripts 09/09/94 Vols 13 and 14 of 43

6 Petition for a Recommendation of a Reprieve from Execution and a Commutation of Death Sentence, Before the Texas Board of Pardons and Parole.

7 Defendant's Motion to Determine Competency to be Executed.

8. Order Denying Applicant's Motion to Determine Competency to be Executed

9. Order Granting Motion to Determine Competency [216th Judicial District Court]

10 Motion Seeking Order Setting Out Protocol for Conducting Competency Evaluations of Scott Panetti

11 Orders to Disclose Records from 216th Judicial District Court of Gillespie County

12 Code of Criminal Procedure Article 46 05 Competency to be Executed

13 Mr Panetti's TDCJ Medical and Administrative Records 1995-2004

14 Psychiatric Evaluation Report from E Lee Simes, M D dated 11/06/92.

Confidential Information
To: Judge Stephen Ables
Re: Scott Panetti
April 28, 2004 / Page 5

## OPINIONS

The following are our opinions to a reasonable degree of psychiatric and psychological probability

1. Mr. Panetti is able to understand direct questions about his past as well as his present situation, and he could answer questions about relevant legal issues regarding his execution if he were willing to do so
2. Mr. Panetti consciously chose not to answer our interview questions about his past and his present, as well as questions about legal aspects of his execution
3. Mr Panetti deliberately and persistently chose to control and manipulate our interview situation by deflecting the interview into religious topics.
4. Mr Panetti knows that he is to be executed, and that his execution will result in his death
5. Although Mr Panetti chooses not to discuss the reason that he is to be executed, he has the ability to understand the reason he is to be executed.

We will be available to answer any questions that you may have about the above

Sincerely,

Mary I Anderson, MD                George Parker, Ph D