IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

SCOTT LOUIS PANETTI,
    Petitioner,

-vs-                                          Case No. A-04-CA-042-SS

DOUG DRETKE, Director, Texas Department of
Criminal Justice, Institutional Division,
    Respondent.

## ORDER

BE IT REMEMBERED on the 19th day of July 2004 the Court called the above-styled cause for a hearing on all pending matters and to show cause why the case should not be dismissed on mootness or ripeness grounds, and why it should not be set for an evidentiary hearing in this Court. The parties appeared through counsel. Before the Court were Respondent's Motion to Dismiss Petition [#4], Petitioner's Motion for Appointment of Counsel [#16], Petitioner's Motion for Authorization of Funds for Expert and Investigative Assistance, Statement of the Need For Confidentiality, and Motion for Leave to File Ex Parte Application for Funds Under Seal [#17], Petitioner's Motion for Discovery [#18], Petitioner's Sealed Ex Parte Motion for Authorization of Funds for Expert Assistance [#19], and Petitioner's Sealed Ex Parte Motion for Authorization of Funds for Investigative Assistance [#20]. Having considered the motions, the arguments of counsel at the hearing, the relevant law, and the case file as a whole, the Court now enters the following opinion and orders.

## Background

The petitioner, Scott Panetti, filed his second application[1] for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 26, 2004, after his execution date had been set and he had exhausted the available state court procedures, alleging he was incompetent to be executed. Panetti's attorney had filed a motion under Article 46.05 of the Texas Code of Criminal Procedure ("Article 46.05") in state court on December 9, 2003. On December 23, 2003, the state district judge, after considering the exhibits attached to the motion, denied Panetti's motion on the grounds:

> [T]he Defendant has failed to set forth alleged facts in support of the assertion that the Defendant is presently incompetent to be executed and has failed to make a substantial showing that the defendant is thus incompetent. The court further finds that the Defendant has failed to raise a substantial doubt of the defendant's competency to be executed on the basis of the said motion and attached documents, as required by Article 46.05(6), Tex. Code Crim. Proc.

Panetti filed a motion for stay of execution in this Court in conjunction with his habeas application, arguing this finding is a decision contrary to clearly established Supreme Court precedent, and specifically, *Ford v. Wainright*, 477 U.S. 399 (1986). The issue before this Court in deciding that initial motion to stay was whether reasonable jurists could disagree regarding whether the state court's decision that Panetti had not made a substantial showing of incompetency that would warrant evaluation of two mental health experts was an unreasonable application of *Ford* and its progeny. Initially, however, Panetti and his attorney had failed to include with their motion to stay or federal habeas application the Article 46.05 motion filed in the state court or any evidence of the Panetti's

---

[1]Panetti filed his first federal habeas petition in 1999, in which he alleged fourteen grounds for relief, including claims that he was incompetent to waive counsel and incompetent to stand trial, but not that he was incompetent to be executed. *See Panetti v. Johnson*, Cause No. A:99-CA-260-SS (W.D. Tex. Mar. 9, 2001). This Court's opinion was affirmed on appeal. *See Panetti v. Cockrell*, No. 01-50347, slip. op. at 6-8 (5th Cir. Jun. 19, 2003).

current mental status. Counsel for Panetti did submit a copy of the Article 46.05 application with his first motion for reconsideration. Eventually, along with a second motion for reconsideration, Panetti presented evidence to support his contention that he is incompetent to be executed at that time in the form of Dr. Cunningham's findings and Professor Dow's observations that Panetti is delusional and misunderstands whether and why he will be executed. Panetti told the Court that he had presented this same evidence to the state court in a renewed motion to determine his competency under Article 46.05. Therefore, the Court held it appropriate that Panetti present his new evidence to the state court first because at that point, the Court was limited by AEDPA to reviewing the reasonableness of the state court's denial of Panetti's Article 46.05 motion based on the evidence it had before it at that time the state court denied that motion in December 2003. However, because the execution was scheduled for the following day, February 5, 2004, the Court stayed the execution for 60 days to allow the state court a reasonable period of time to consider the evidence of Panetti's current mental state and decide whether he has now "raised a substantial doubt of [his] competency to be executed" and made the requisite showing of incompetency that entitles him to a mental health evaluation by at least two mental health experts under Article 46.05. TEX. CODE. CRIM. P. Art. 46.05.

After the Court's February 4, 2004 Order, the state court judge, Judge Ables, asked the parties to recommend mental health experts. On February 19, 2004, Panetti's counsel filed ten motions in state court, asking for several things including that counsel be appointed, funds to hire experts, discovery, and that the state refrain from setting a new execution date, among other requests. On February 20, 2004, Panetti's lawyer gave Judge Ables a mental health expert's name. However, the trial judge had decided to use two mental health experts he selected instead of those recommended

by the parties. On February 23, 2004, Judge Ables entered an order citing Article 46.05(f) appointing psychiatrist Mary Anderson and clinical psychologist George Parker to examine Panetti. Counsel for Panetti contends that by appointing these experts, Judge Ables implicitly found Panetti had made "a substantial showing of incompetency" with the documentary evidence he had submitted. On April 28, 2004, the appointed experts filed their joint report concluding Panetti was competent to be executed. Counsel for Panetti was then order to raise any other matters regarding competency by May 21, 2004. On May 21, 2004, Panetti filed objections to the methods and conclusions of the experts and renewed his motions to appoint counsel, hire a mental health expert, and to hire an investigator. He also asked the trial court to hold an evidentiary hearing, which counsel for Panetti maintains is required by the plain language of Article 46.05. On May 26, 2004, Judge Ables entered a short order in which he stated he had appointed two experts pursuant to Article 46.05 and that it "appears from the doctors' reports that the Defendant, Scott Louis Panetti, understands that he is to be executed; that the execution is imminent, and that the Defendant understands the reasons he is being executed." Respondent's Opp. to Mot. for Funds, Ex. A (May 26, 2004 Ables Order). Thus, concluded Judge Ables, "[b]ased on the aforesaid doctors' reports, the Court finds the Defendant has failed to show, by a preponderance of the evidence, that he is incompetent to be executed." *Id.*

At approximately the same time Judge Ables issued his order denying Panetti's motion under Article 46.05, this Court entered a show cause order instructing Panetti to show cause why his case should not be dismissed as moot. Panetti responded by filing motions for appointment of counsel, for authorization of funds for expert and investigative assistance, and for discovery. The Court set the case for hearing on these motions, as well as the motion to dismiss filed in January by the Respondent, and so that the parties could present their arguments regarding whether Panetti's *Ford*

claim faced any mootness or ripeness problems in light of the fact there is currently no pending execution date.

## Analysis

I.  **Preliminary Issues: Ripeness and Successive Petitions**

At the time he filed it, Panetti's petition was definitely ripe for review as he was facing a February 5, 2004 execution. *See Stewart v. Martinez-Villareal*, 523 U.S. 637, 643 (1998) (declaring a petitioner's *Ford* claim "unquestionably ripe" once the state supreme court issued a warrant for his execution). Then this Court stayed the execution for 60 days so that the state court could consider the evidence of Panetti's competency to be executed presented to this Court in conjunction with his motions to stay. The state court did review the evidence and ultimately denied Panetti's Article 46.05 motion. However, the district attorney has not yet filed his motion to secure a new execution date. The parties at the hearing represent that both consider Panetti's execution imminent – the district attorney is simply refraining from requesting a date until these proceedings are concluded so the Court is not again faced with emergency motions to stay. An imminent execution is the prerequisite to a ripe *Ford* claim. *Id.* at 644-45 (stating a petitioner's competency to be executed cannot be determined until his execution is imminent). The parties agree Panetti's execution is indeed imminent and therefore the Court holds *Panetti's Ford* claim is ripe for review.

Respondent contends this Court should dismiss this petition as successive or transfer it to the Fifth Circuit so that Panetti can secure the leave of the Fifth Circuit to pursue his successive petition. On April 24, 1996, significant amendments were made to the habeas corpus statute by the Antiterrorism and Effective Death Penalty Actof 1996 ("AEDPA"). 28 U.S.C. § 2244(b) was amended to provide that before a second or successive application for writ of habeas corpus is filed

in the district court, an applicant must move in the appropriate court of appeals for an order authorizing the district court to consider the application. *See* 28 U.S.C. § 2244(b)(3).

AEDPA's limitations on successive applications for writs of habeas corpus present a thorny problem for petitioners with *Ford* claims in light of *Martinez-Villareal*. On the one hand, under *Martinez-Villareal*, a *Ford* claim is not ripe until the petitioner's execution is set, or at least imminent. Therefore, it would be futile to raise the *Ford* claim in a initial application for federal habeas relief because it would inevitably be dismissed as premature. *See Martinez-Villareal*, 523 U.S. at 644-65 (acknowledging the propriety of dismissing a *Ford* claim as premature prior to the scheduling of the execution); *see also In re Davis*, 121 F.3d 952, 953 (5th Cir. 1997) (explaining in the procedural history "Our court denied the motion without prejudice as premature, because Davis' execution had not been scheduled."). On the other hand, if a petitioner does not raise a *Ford* claim in his initial petition, and instead waits until it is ripe (*i.e.*, his execution date is set), pursues the available state remedies under Article 46.05, and then seeks federal habeas review, he faces potential dismissal of his petition under AEDPA since the claim was not presented in an earlier petition and is based on neither a new rule of constitutional law (*Ford* was decided in 1986) nor a factual predicate that could not have been discovered based on the exercise of due diligence (Panetti's history of mental illness predates his first habeas petition). *See* 28 U.S.C. § 2244(b)(2). It is, however, based on a factual predicate that did not exist at the time he filed his first petition – the setting of his execution date.

The Fifth Circuit in *Davis*, prior to *Martinez-Villareal*, applied § 2244(b)(2) to a situation like this one, where the petitioner did not raise a *Ford* claim in his first petition but did raise it in a successive petition once his execution date had been set. Acting without the Supreme Court's

guidance in *Martinez-Villareal* that a *Ford* claim is not ripe until an execution is imminent, the Fifth Circuit concluded § 2244(b)(2)(A) did not apply to the petitioner's claim because the legal basis of his claim had been available since the year *Ford* was decided (1986) and it was only the factual basis that was not available. *Davis*, 121 F.3d at 956. The Fifth Circuit also declined to create an equitable exception to § 2244(b) for those petitioners who present their *Ford* claims at the first available opportunity (*i.e.*, once his execution date was set) even though the appellate court was willing to accept that the petitioner was not abusing the writ since he was acting at the first available opportunity. *Id.* Finally, the Fifth Circuit rejected the petitioner's argument § 2244(b) is unconstitutional in the context of *Ford* claims since it precludes consideration by a federal court of a mature *Ford* claim presented for the first time on the grounds federal court review can be obtained through United States Supreme Court review of state court competency proceedings or by the petitioner's filing an original habeas application to the United States Supreme Court. *Id.* (citing U.S. CONST. Art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless, when in Cases of Rebellion or Invasion the public Safety may require it.")).

The Fifth Circuit acknowledged "the uneasy fit" of *Ford* claims and successive writs post *Martinez-Villareal* in *Richardson v. Johnson*, 256 F.3d 257 (5th Cir. 2001) but explicitly avoided the question presented in this case. In *Richardson*, the petitioner, like Panetti, raised his *Ford* claim for the first time in a second petition once his execution date was set. *Id.* at 258. The district court denied relief but granted his application for certificate of appealability on the question of whether *Martinez-Villareal* overruled *Davis*. In *Richardson*, the Fifth Circuit made clear that there was no question the petitioner was pursuing a successive writ. *Id.* However, the Circuit noted that the question of whether a *Ford* claim is subject to the limits of a successive writ is a "distinct question,"

and also noted the Supreme Court in *Martinez-Villareal* explicitly declined to decide the case of a petitioner who did not present his *Ford* claim in his first federal habeas (because petitioner Martinez-Villareal had). *Id.* at 258-59. Thus, the Circuit framed the issue this way:

> This leaves the argument that Richardson did not have a *Ford* claim at the time he filed his first federal habeas, a contention with two aspects. The first is that the factual basis for the *Ford* claim could not have been discovered at the time of the first federal habeas. That claim is refuted by the assertion he has long suffered this bipolar disorder and by his own expert witness.
> The second aspect is that the *Ford* claim was not ripe when the first federal habeas petition was filed for the reason that the execution was not then imminent. To accept this argument would mean as a practical matter that no *Ford* claim would need to be presented in a first filed habeas, given that the state courts, in part at our urging, now seldom set execution dates until after the first round of appeals and habeas.

*Id.* at 259. The Fifth Circuit then concluded it "need not wrestle" with the issue of whether an unripe *Ford* claim needs to be presented in a first filed habeas petition because in *Richardson*, it was clear based on the findings of fact of the state courts that his *Ford* claim had no merit. *Id.* In spite of avoiding this significant question, however, the Fifth Circuit nevertheless held that while "*Ford* claims admittedly have an uneasy fit with AEDPA's limits upon successive writs," that fit was examined in *Davis* and *Davis* remains "sound and binding." *Id.*

This Court is thus in a difficult position because in the Fifth Circuit in *Richardson* avoided the exact question presented in this case and without explanation, held *Davis* remains good law even though in light of *Martinez-Villareal,* Panetti's *Ford* claim was clearly not ripe until his execution date was set. To further complicate matters, the Texas appellate courts have abdicated all responsibility with regard to *Ford* claims. In *Ex Parte Caldwell*, 58 S.W.3d 127, 130 (Tex. Crim. App. 2000), the Texas Court of Criminal Appeals held Article 46.05 "provides that jurisdiction of the motion remains in the trial court and permits the Court of Criminal Appeals to review only a

-8-

finding of incompetence. Under the statute, we have no other role in the process." The impact of *Ex Parte Caldwell*, besides the obvious problem that Article 46.05 will never be subject to clarification by the appellate courts of Texas, is a petitioner seeking relief through Article 46.05 cannot appeal a state court's denial of his *Ford* claim to the United States Supreme Court even on federal constitutional grounds, since the Texas Court of Criminal Appeals cut off his right to appellate review to the Texas appellate courts on a purely state law basis. This in turn undermines the rationale of *Davis*, which in part concluded that § 2244(b) was not unconstitutional as applied to *Ford* claims because "federal court determination of the issue can be sought through Supreme Court review of the state court competency proceedings." *Davis*, 121 F.3d at 956. In Texas this is clearly not the case.

Thus, if Panetti cannot bring his *Ford* claim in an initial petition because it is not ripe, and cannot bring it in a second petition once his execution date is set under § 2244(b) and the rationale of *Davis*, then he cannot secure federal review of his *Ford* claim at all in Texas except to filed an original habeas application in the United States Supreme Court. The Fifth Circuit in *Richardson* recognized even after *Davis* that it may be that petitioners such as Panetti do not have ripe *Ford* claim when they file their first federal habeas petitions and therefore as a practical matter, no *Ford* claim needs to be presented in a first filed habeas. *Richardson*, 256 F.3d at 259. Although the Fifth Circuit avoided "wrestling" with this question, this Court, squarely presented with it, cannot. Therefore, it light of the fact the rationale of *Davis* is called into question by the combination of the Supreme Court's decision in *Martinez-Villareal* and the Texas Court of Criminal Appeals' decision in *Ex Parte Caldwell*, and the question left often by the Fifth Circuit in *Richardson*, the Court concludes Panetti had no *Ford* claim until his execution date was set. Therefore, it would have been

futile to require him to assert it in his first petition, and the ripe claim is now properly before this Court. Accordingly, the Respondent's motion to dismiss this petition as successive is denied.

## II.   The State Court Decision

The Court now turns to the merits of Panetti's *Ford* claim.[2] Of course, this Court can only grant Panetti's petition if the state trial judge's decision that he competent to be executed is (1) "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or was (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Brown v. Cain*, 104 F.3d 744, 749 (5th Cir. 1997), *cert. denied*, 520 U.S. 1195 (1997).

As the Court explained its prevision Orders in this case, in *Ford*, the Supreme Court in a plurality opinion declared the execution of the insane a violation of the Eighth Amendment prohibition of cruel and unusual punishment. 477 U.S. at 409-410. According to the Fifth Circuit's interpretation of *Ford*, a state does not run afoul of the Eighth Amendment if it ensures "that a person know the fact of his impending execution and the reason for it." *Fearance v. Scott*, 56 F.3d 633, 640 (5th Cir. 1995). In 1999, Texas enacted Article 46.05, which codifies this definition of insanity and sets forth the procedures by which the state courts should evaluate a petitioner's competency-to-be-executed claim. *See* TEX. CODE CRIM. PROC. Art. 46.05. In relevant part, Article 46.05 directs the state court:

---

[2]This claim is exhausted because under *Ex parte Caldwell*, discussed above, Panetti has no right to appeal the trial judge's denial of his Article 46.05 motion in the state courts. *See Patterson v. Dretke*, 370 F.3d 480, 483 (5th Cir. 2004).

(d) On receipt of a motion filed under this article, the trial court shall determine whether the defendant has raised a substantial doubt of the defendant's competency to be executed on the basis of:
   (1) the motion, any attached documents, and any responsive pleadings; and
   (2) if applicable, the presumption of competency under Subsection (e).

(e) If a defendant is determined to have previously filed a motion under this article, and has previously been determined to be competent to be executed, the previous adjudication creates a presumption of competency and the defendant is not entitled to a hearing on the subsequent motion filed under this article, unless the defendant makes a prima facie showing of a substantial change in circumstances sufficient to raise a significant question as to the defendant's competency to be executed at the time of filing the subsequent motion under this article.

(f) If the trial court determines that the defendant has made a substantial showing of incompetency, the court shall order at least two mental health experts to examine the defendant using the standard described by Subsection (h) to determine whether the defendant is incompetent to be executed.

(g) If the trial court does not determine that the defendant has made a substantial showing of incompetency, the court shall deny the motion.

(h) A defendant is incompetent to be executed if the defendant does not understand:
   (1) that he or she is to be executed and that the execution is imminent; and
   (2) the reason he or she is being executed.
(i) Mental health experts who examine a defendant under this article shall provide within a time ordered by the trial court copies of their reports to the attorney representing the state, the attorney representing the defendant, and the court.

(j) By filing a motion under this article, the defendant waives any claim of privilege with respect to, and consents to the release of, all mental health and medical records relevant to whether the defendant is incompetent to be executed.

(k) If, on the basis of reports provided under Subsection (i), the motion, any attached documents, any responsive pleadings, and any evidence introduced in the final competency hearing, the trial court makes a finding by a preponderance of the evidence that the defendant is incompetent to be executed, the clerk shall send immediately to the court of criminal appeals in accordance with Section 8(d), Article 11.071, the appropriate documents for that court's determination of whether any existing execution date should be withdrawn and a stay of execution issued. If a stay of execution is issued by the court of criminal appeals, the trial court periodically shall order that the defendant be reexamined by mental health experts to determine whether the defendant is no longer incompetent to be executed.

>   (l) If the trial court does not make the finding as described by Subsection (k), the court may set an execution date as otherwise provided by law.

*Id.* The Fifth Circuit has declared these procedures in compliance with the mandates of *Ford* and therefore constitutional on their face. *Caldwell v. Johnson*, 226 F.3d 367, 374 (5th Cir. 2000). Therefore, had Judge Ables followed Article 46.05, the reasonableness of his legal conclusions would be insulated from attack on habeas review since it would be impossible for this Court to hold they were "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

However, in this case, Judge Ables deviated from the parameters of Article 46.05. On February 23, 2004, he entered an order citing Article 46.05(f) appointing psychiatrist Mary Anderson and clinical psychologist George Parker to examine Panetti. By citing Article 46.05(f) and appointing the two experts, Judge Ables implicitly found Panetti had made "a substantial showing of incompetency."[3] TEX. CODE CRIM. PROC. art. 46.05(f). Thus, under the plain language of Article 46.05(k), he was then required to consider the mental health experts' reports, Panetti's motion, attached documents, responsive pleadings, and "any evidence introduced in the final competency hearing" before making a determination based on the preponderance of the evidence whether Panetti was competent to be executed. TEX. CODE CRIM. PROC. art. 46.05(k). However, Judge Ables did not hold a "final competency hearing" and therefore did not consider any responsive evidence Panetti might have presented. As such, he did not comply with Article 46.05.

---

[3] As the Court explained in detail its previous Orders in this case, states are allowed under *Ford* to require an initial documentary demonstration of incompetency before ordering an mental health evaluation. With regard to Panetti's most recent Article 46.05 motion, however, Judge Ables implicitly found Panetti met this threshold burden.

That Judge Ables did not comply with Article 46.05 does not automatically mean Panetti is entitled to relief on his *Ford* claim. It simply means that Judge Ables' conclusion is taken out of the safe harbor created by the Fifth Circuit in *Caldwell v. Johnson* that insulates state proceedings conducted in compliance with Article 46.05 from habeas attacks on the grounds they fall short of what *Ford* requires. The next question for this Court is whether what the state trial judge did in this case, albeit inconsistent with what Texas law requires, nevertheless complied with the minimal requirements of *Ford*. *Ford* itself involved a situation where the state (albeit the governor, not a trial court), appointed mental health experts to evaluate the petitioner's competency to be executed. Justice Powell in his critical and decisive concurrence concluded Florida's procedures did not comport with the Constitution's guarantee of due process. Justice Powell emphasized the Florida procedures did not afford the petitioner the "opportunity to be heard" because the Florida statute did not require the governor to consider materials submitted by the prisoner. *Ford*, 477 U.S. at 424. Therefore, concluded Justice Powell:

> [T]he determination of the petitioner's sanity appears to have been made *solely* on the basis of the examinations performed by state-appointed psychiatrists. Such a procedure invites arbitrariness and error by preventing the affected parties from offering contrary medical evidence or even from explaining the inadequacies of the State's examinations. It does not, therefore, comport with due process. It follows that the State's procedure was not "fair," and that the District Court on remand must consider the question of petitioner's competency to be executed.

*Id.* at 424-425. Justice Powell went on to opine that due process would not require a full-blown trial or anything close. As long as the state provided an impartial entity to "receive evidence and argument from the prisoner's counsel, including expert psychiatric evidence that may differ from the State's own psychiatric examination," it would be affording the petitioner due process. *Id.* at 427. In this case, however, it was exactly this ability to present his own evidence and refute the state-

appointed psychiatrists' opinions that Panetti was denied. Had the trial court complied with Article 46.05 and afforded Panetti a final evidentiary hearing, it would have complied with the mandates of *Ford* as well. However, in falling short of the mandates of Article 46.05, Judge Ables fell short of the mandates of *Ford* as well.

Thus, the Court will hold an evidentiary hearing at which Panetti can introduce his own evidence and attempt to rebut the state court-appointed experts' conclusions that he is competent to be executed. In order to ensure his ability to adequately present his claim, the Court will appoint counsel[4] and afford him the funds to obtain investigative and expert assistance. Additionally, the Court will in a separate order address Panetti's motion for discovery.

In accordance with the foregoing:

IT IS ORDERED that Respondent's Motion to Dismiss Petition [#4] is DENIED.

IT IS FURTHER ORDERED that Petitioner's Motion for Appointment of Counsel [#16] is GRANTED.

IT IS FURTHER ORDERED that Petitioner's Motion for Authorization of Funds for Expert and Investigative Assistance and Motion for Leave to File Ex Parte Application for Funds Under Seal [#17] are GRANTED.

IT IS FURTHER ORDERED that Petitioner's Sealed Ex Parte Motion for Authorization of Funds for Expert Assistance [#19] is GRANTED and Defendant is authorized to retain an expert at the maximum rate of $100 per hour. Defendant may incur

---

[4]The Fifth Circuit recently upheld in the validity of appointing counsel to assist in the investigation of a claim that the petitioner could not have raised in an earlier petition. *See In re: Hearn*, ___ F.3d. ___, 2004 WL 1497522 (5th Cir. Jul. 6, 2004).

up to $1000 of expert services from his expert. If Defendant believes he needs more than $1000 worth of expert services, he must file a motion justifying the same and detailing the expected expense. Defendant is ordered to obtain and file with the Court an itemized accounting from the expert of what services he provided and the amount of time he expended.

IT IS FURTHER ORDERED that Petitioner's Sealed Ex Parte Motion for Authorization of Funds for Investigative Assistance [#20] is GRANTED and Defendant is authorized to retain an investigator at the maximum rate of $50/hour. Defendant may incur $1000 in investigatory services. If Defendant believes he needs more investigation after incurring the expense of $1000, he must file a motion with this Court justifying the same and detailing the expected expense. Defendant is ordered to obtain and file with the Court an itemized accounting from the investigator of what he investigated and the amount of time spent.

IT IS FINALLY ORDERED that this case is SET for EVIDENTIARY HEARING on *August 23*, 2004 at *9:30* a.m. in Courtroom No. 2, United States Courthouse, 200 West Eighth Street, Austin, Texas.

SIGNED this the *20th* day of July 2004.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE