IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SCOTT PANETTI, § | | |
|     Petitioner § | | |
| § | | |
| V. § | Case No. A-04-CA-042-SS | |
| § | | |
| WILLIAM STEPHENS, § | | |
| Director, Texas Department of § | | |
| Criminal Justice, Correctional § | | |
| Institutions Division § | | |
|     Respondent. § | | |

**MR. PANETTI IS SCHEDULED TO BE EXECUTED
ON DECEMBER 3, 2014.**

**PETITIONER'S MOTION FOR AUTHORIZATION OF FUNDS
UNDER 18 U.S.C. § 3599 TO HIRE
MENTAL HEALTH EXPERT AND INVESTIGATOR**

Counsel for Petitioner Scott Panetti, believing that "expert . . . services are reasonably necessary for the representation of the defendant," 18 U.S.C. § 3599(f), asks this Court to authorize funds so that they may retain a mental health expert and an investigator to assist them in preparing a habeas corpus petition raising a claim under *Ford v. Wainwright*, 477 U.S. 399 (1986), and *Panetti v. Quarterman*, 551 U.S. 930 (2007). *See McFarland v. Scott*, 512 U.S. 849 (1994). Counsel seek funds so that they can hire: (1) a mental health expert to conduct a comprehensive examination of Mr. Panetti that is consistent with professional standards for

-1-

determining competency for execution; and (2) an investigator to interview TDCJ mental health treatment staff, correctional officers, inmates, and other collateral witnesses who are familiar with Mr. Panetti's present mental condition. Counsel for Mr. Panetti require these services because the state courts denied their request for funds to obtain expert and investigative assistance to prepare a motion under Tex. Code Crim. Proc. art. 46.05 raising a *Ford* claim.

I. **MR. PANETTI IS ENTITLED TO PRE-PETITION EXPERT AND INVESTIGATIVE ASSISTANCE.**

Mr. Panetti is indigent. He has made a threshold preliminary showing of incompetence. *See* Motion for Stay of Execution at 12-32. He is, therefore, entitled to the appointment of counsel and related services for the purpose of investigating and preparing a federal habeas petition raising a *Ford* claim. *See* 18 U.S.C. § 3599(a)(2), (e), (f); *McFarland v. Scott*, 512 U.S. 849 (1994).

Interpreting the precursor statute to 18 U.S.C. § 3599(a)(2)[1] in light of its related provisions, the Supreme Court held in *McFarland* that "the right to appointed counsel adheres prior to the filing of a formal, legally sufficient habeas corpus petition." 512 U.S. at 855. Specifically, the Court noted that Section 3599(a)(2) incorporated Section 3599(f), which entitles capital defendants to a variety of expert and investigative services upon a showing of necessity. The Court explained that:

> *The services of investigators and other experts may be critical in the preapplication phase of a habeas corpus proceeding, when possible*

---
[1] In 2006, the death penalty procedures set out in 21 U.S.C. §§ 848(q)(4)-(10) were repealed and recodified, without change, at 18 U.S.C. § 3599.

> *claims and their factual bases are researched and identified.* Section [3599(f)] clearly anticipates that capital defense counsel will have been appointed under § [3599(a)(2)] before the need for such technical assistance arises, since the statute requires "the defendant's attorneys to obtain such services" from the court. In adopting § [3599(a)(2)], Congress thus established a right to preapplication legal assistance for capital defendants in federal habeas corpus proceedings.

*Id.* (emphasis added, citations omitted).

*In re Hearn*, 376 F.3d 447 (5th Cir. 2004), is instructive. In *Hearn*, the Fifth Circuit applied *McFarland*'s principles and found a federal statutory right to counsel and resources prior to the petitioner's filing a motion for authorization to file a successive habeas petition. Similarly, Mr. Panetti is entitled to such pre-petition assistance.

*Hearn* involved a petitioner whose initial federal habeas petition had been filed before the Supreme Court issued its decision in *Atkins v. Virginia*, 536 U.S. 304 (2002), prohibiting the execution of the mentally retarded. Consequently, Hearn had to seek authorization from the Fifth Circuit to file a successive habeas petition in the district court raising an *Atkins* claim. *See* 28 U.S.C. § 2244(b)(3). If he could establish a *prima facie* claim of mental retardation, he would be entitled to file a successive habeas corpus petition and litigate the merits of his *Atkins* claim. At the time of his scheduled execution, however, Hearn was without federal counsel and other resources to investigate and prepare a motion for authorization to file a successive habeas corpus petition. Through voluntary counsel, who conceded that due to a lack of resources they were unable at that time to present a *prima facie*

claim of mental retardation, Hearn requested appointment of counsel in state court. The state court construed his request as a subsequent habeas corpus application and dismissed it for failing to make a *prima facie* case of mental retardation. Hearn then asked the federal district court to appoint counsel and stay the execution. The district court denied the motions.

On appeal, the State argued that Hearn was not entitled to pre-authorization appointment of counsel and the furnishing of other fact-development resources, because he had not made a *prima facie* showing that he was mentally retarded. The Fifth Circuit rejected the State's argument, holding that:

> Because § [3599(a)(2)] – read in conjunction with *McFarland* – affords counsel to prisoners to prepare federal habeas petitions, a substantive, merits assessment of the petition is irrelevant to the appointment of counsel. As a result, a prisoner's motion for counsel to investigate and prepare a successive *Atkins* claim need only be supported by a colorable showing of mental retardation.

*Id.* at 454-55 (internal citations and quotation marks omitted). *Hearn* described this showing as a "modest evidentiary threshold." *Id.* at 455.

The Fifth Circuit found that Hearn was entitled to appointed counsel and appropriate resources to investigate and, if he had a viable *Atkins* claim, prepare a motion for authorization within 180 days. *Id.* at 452-55.[2] In addition, the Fifth Circuit held that a stay of execution was "imperative to ensure the effective presentation of Hearn's application for authority to file his *Atkins* claim." *Id.* at

---

[2] The Fifth Circuit later granted Hearn two extensions of time to file his motion for authorization to file a successive petition, giving him 324 days to investigate and prepare his motion for authorization.

-4-

458. Hearn returned to the district court, where he obtained funds for expert assistance in preparing his motion for authorization to file a successive petition. *See Hearn v. Dretke*, No. 3:04-cv-00450-D (N.D. Tex. Jan. 19, 2005) (DE 15).[3]

Mr. Panetti's grounds for obtaining authorization of funds for assistance are much stronger than Hearn's. At the time the district court granted Hearn's request for expert assistance, he had not yet obtained – let alone, sought – authorization to file a successive petition raising his *Atkins* claim. Unlike Hearn, Mr. Panetti does not need to secure permission from the Fifth Circuit before filing a habeas petition raising a *Ford* claim in this Court. *See Panetti*, 551 U.S. at 947 (holding that AEDPA's bar on second or successive petitions does not apply to a *Ford* claim brought when the claim is first ripe).

In addition to the federal appointment statute, as well as *McFarland* and *Hearn*, due process under *Ford* and *Panetti* entitles an inmate to "a constitutionally adequate opportunity to be heard." *Panetti*, 551 U.S. at 952. Once an inmate has made a threshold preliminary showing of incompetence, the Eighth and Fourteenth Amendments require that he be provided with his own mental health expert to conduct an evaluation and assist him in preparing the competency claim. *See id.* at 947-52. *Panetti* confirms that this threshold preliminary showing is neither onerous nor requires an inmate to present evidence that answers the *Ford*

---

[3] In a clarifying opinion, the Fifth Circuit limited *Hearn*'s application to *Atkins* claims. *In re Hearn*, 389 F.3d 122 (5th Cir. 2004). However, *Hearn*'s framework and reasoning – particularly its interpretation and application of *McFarland* – naturally extend to *Ford* claims.

inquiries. *See id.* at 938, 950. Instead, the showing is designed to place the initial burden on the inmate – before due process protections are triggered – to demonstrate that his claim is not a frivolous attempt to delay the execution. *Id.* at 946-47, 952.

*Wood v. Thaler*, 572 F. Supp.2d 814 (W.D. Tex. 2008), recognizes this understanding of the due process principles of *Ford* and *Panetti*. In *Wood*, a federal judge in the Western District of Texas found a state trial court's application of Article 46.05 unconstitutional under circumstances identical to those Mr. Panetti faces. Wood filed, through *pro bono* counsel, a motion in the state trial court requesting appointment of counsel and funds to hire a mental health expert to assist him in investigating, developing, and presenting evidence supporting a claim that he was currently incompetent to be executed. *Id.* at 816. He supported the motion with non-frivolous evidence of incompetency. *Id.* at 816-17. The trial court denied the motions, and the Texas Court of Criminal Appeals dismissed the appeal and denied the motion for stay of execution. *Id.* The petitioner then filed a motion for stay of execution, motion for appointment of counsel, and motion for funds for expert assistance in the federal district court. *Id.*

The district court found that the state courts deprived Wood of his right to due process under *Ford* and *Panetti*:

> The initial constitutional deficiency with what transpired during petitioner's latest state habeas corpus proceeding is that petitioner was afforded neither court-appointed counsel nor expert assistance to challenge his own competence to be executed. Instead, the State of Texas insisted an arguably insane death row inmate proceeding

without the assistance of court-appointed counsel was required to satisfy the threshold requirement of Article 46.05, *i.e.*, make a "substantial showing of incompetency," before the inmate was entitled to either the assistance of counsel or the assistance of any mental health expert. With all due respect, a system which requires an insane person to first make "a substantial showing" of his own lack of mental capacity without the assistance of counsel or a mental health expert, in order to obtain such assistance is, by definition, an insane system.

*Id.* at 817. Even though the district court found the evidence of Wood's incompetence "far from compelling" (noting that he had never been definitively diagnosed with *any* mental illness) and far from satisfying the *Ford* standard, *id.* at 818, the court nonetheless concluded that, because the state-court competency proceeding lacked "fundamental due process protections," Wood was entitled to appointed counsel and funding to hire a mental health expert to assist him in developing evidence in support of his *Ford* claim. *Id.* at 820.

## II. MR. PANETTI CAN MAKE A THRESHOLD PRELIMINARY SHOWING OF INCOMPETENCE.

In his Motion for Stay of Execution, filed simultaneously with this Motion for Authorization of Funds, Mr. Panetti made a threshold preliminary showing of incompetence under *Ford* and *Panetti*. *See* Motion for Stay at 12-32. Counsel now require the assistance of a mental health expert and investigator to assist them in investigating, preparing, and presenting a *Ford* claim in this Court.

## III. COUNSEL REQUEST THE ASSISTANCE OF A MENTAL HEALTH EXPERT.

Undersigned counsel seek authorization of funds to retain Diane Mosnik,

Ph.D., a neuropsychologist.[4] Dr. Mosnik received her Master's of Science in Clinical Neuropsychology and her doctorate in Clinical Neuropsychology from the University of Chicago. She has extensive experience in the area of schizophrenia. She has had academic appointments at the Baylor College of Medicine, where she taught in the Departments of Neurology and Psychiatry. Dr. Mosnik currently works as a clinical neuropsychologist. She is licensed to practice in the State of Texas.

Undersigned counsel have contacted Dr. Mosnik. Counsel anticipate that Dr. Mosnik will review Mr. Panetti's mental health records pre-dating the offense, prior expert evaluations of Mr. Panetti, and any pertinent TDCJ records. In addition, Dr. Mosnik will interview and evaluate Mr. Panetti and render a preliminary assessment of his competency. This work will require approximately 6 hours for record review and 10 hours for interview and assessment. Dr. Mosnik has agreed to reduce her hourly rate for record review to $300 an hour. Her assessment rate is $350 an hour. Dr. Mosnik, who resides in Wisconsin, will not bill for her travel time, in order to conserve the Court's resources. Her expenses will likely not exceed $250, bringing the total funding requested to $5,550.

**IV. COUNSEL REQUEST THE ASSISTANCE OF AN INVESTIGATOR.**

In preparation for filing a habeas petition raising a *Ford* claim, counsel for Mr. Panetti need an investigator to identify, locate, and interview witnesses who

---

[4] For the Court's convenience, Dr. Mosnik's *curriculum vitae* is attached as Exhibit 1.

are familiar with Mr. Panetti's recent past behavior and current mental condition. These witnesses include TDCJ physicians, psychologists, psychiatrists, mental health treatment staff, and nurses; TDCJ correctional officers; and death row inmates housed near Mr. Panetti currently and in the recent past. Without such assistance, counsel will be unable to develop professional and lay witness evidence in support of the claim that Mr. Panetti is presently incompetent to be executed.

Undersigned counsel seek authorization of funding so that they may hire the private investigator Jeffrey S. Mitchel.[5] Mr. Mitchel is a board-certified criminal defense investigator who lives in Kerrville, Texas. He established his own investigative firm in 1998, after working nearly 25 years as an investigator and highway patrol trooper for the Texas Department of Public Safety.

Undersigned counsel have contacted Mr. Mitchel. Mr. Mitchel will need to review pertinent TDCJ records before conducting interviews with collateral witnesses. After completing the interviews, Mr. Mitchel will need to write reports for Dr. Mosnik to read in conjunction with her evaluation of Mr. Panetti. Counsel anticipate that the investigation will require approximately 12 hours for reviewing records, interviewing witnesses, and writing reports; and 10 hours for traveling to the Polunsky Unit in Livingston, Texas. Mr. Mitchel bills his services at $75 per hour. His expenses will likely not exceed $300, bringing the total funding requested to $1,950.

**PRAYER FOR RELIEF**

---

[5] For the Court's convenience, Mr. Mitchel's *curriculum vitae* is attached as Exhibit

For the reasons stated, counsel for Mr. Panetti ask this Court to authorize prepayment of $5,550 to retain Diane Mosnik, Ph.D., and $1,950 to hire Jeffrey S. Mitchel.

A proposed order is attached for the Court's convenience.

Respectfully Submitted,

/s/ Kathryn M. Kase
Kathryn M. Kase
Texas Bar No. 11104050
Texas Defender Service
1927 Blodgett Street
Houston, Texas 77004
(Tel) 713-222-7788
(Fax) 713-222-0260
Email: kmkase@texasdefender.org

Gregory W. Wiercioch
Texas Bar No. 00791925
University of Wisconsin Law School
975 Bascom Mall
Madison, Wisconsin 53706
(Tel) 832-741-6203
(Fax) 608-263-3380
Email: Wiercioch@wisc.edu

*Counsel for Petitioner, Scott Panetti*

**CERTIFICATE OF SERVICE**

2.

I certify that on this 25th day of November 2014, I electronically filed the foregoing pleading with the clerk of the court for the U.S. District Court, Western District of Texas, using the electronic case filing system. A "Notice of Electronic Filing" was sent to Counsel for Respondent at the following e-mail address:

Ellen Stewart-Klein
Assistant Attorney General
Ellen.Stewart-Klein@texasattorneygeneral.gov

                                               Kathryn M. Kase

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SCOTT PANETTI,<br>Petitioner<br><br>V.<br><br>WILLIAM STEPHENS,<br>Director, Texas Department of<br>Criminal Justice, Correctional<br>Institutions Division<br>Respondent. | § § § § § § § § § § | Case No. A-04-CA-042-SS |

**O R D E R**

The Court has reviewed Petitioner Scott Panetti's Motion for Authorization of Funds under 18 U.S.C. § 3599 to Hire Mental Health Expert and Investigator. Petitioner's motion is GRANTED. The Court finds that the requested services are reasonably necessary to Petitioner's representation. Accordingly, the Court GRANTS the prepayment of funds in the amount of $_____ for counsel to hire Diane Mosnik, Ph.D., and $_____ for counsel to hire Jeffrey S. Mitchel to assist in the development and preparation of Mr. Panetti's *Ford* claim.

Entered this \_\_\_\_ day of _____, 2014.

_____
HON. SAM SPARKS
U.S. DISTRICT COURT JUDGE